

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

No. 1:23-cr-121

NABYUNISSA BANGOURA,

*Defendant.*

## STATEMENT OF FACTS

The United States and the defendant, Nabyunissa Bangoura (hereinafter, "the defendant"), agree that, at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about September 2019 through at least in or about August 2022, in the Eastern District of Virginia and elsewhere, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with others, including Hadja Franklin and Tanziludin Bangurah, to distribute 40 grams or more of a mixture and substance containing fentanyl.

2. Along with Ms. Franklin and Mr. T. Bangurah, the defendant manufactured and sold counterfeit oxycodone and Xanax pills. The defendant and his coconspirators manufactured their pills in a home laboratory in their residence, sold them on the Internet using darkweb markets and an encrypted application, and distributed them through the mail.

3. In order to set-up their home laboratory, the defendants purchased a pill press, binding agents, and protective gear used while manufacturing their pills. The defendants purchased fentanyl from China using the Internet.

1

4. In order to distribute their counterfeit pills, the defendants operated accounts on at least nine darkweb markets using the moniker "MonPham." The defendants also sold pills on the encrypted application Wickr, using the moniker "DrZhivagoEM." While the defendants' advertisements for counterfeit oxycodone specifically disavowed the use of fentanyl, the government made numerous controlled purchases of counterfeit oxycodone that, in fact, contained fentanyl.

5. Beginning in late 2021, the government began making controlled purchases from the defendants. In total, the government made 13 controlled purchases from the defendants. Four of those purchases, totaling 95 pills, were for counterfeit Xanax pills. The remaining nine purchases, totaling 511 pills, were for counterfeit oxycodone pills. Numerous purchases were sent to undercover mailboxes in the Eastern District of Virginia.

6. Law enforcement was able to identify the defendants' residence in Tobyhanna, Pennsylvania by tracing the flow of cryptocurrency associated with certain controlled purchases. Law enforcement discovered that the defendants typically mailed their drugs using a distinctive type of packaging sold only at WalMart and obtained surveillance footage of Mr. T. Bangurah purchasing large amounts of the packing material at a WalMart store located near the defendants' residence.

7. Law enforcement conducted surveillance of the defendants. On August 24, 2022, law enforcement observed Mr. T. Bangurah drive from the residence in Tobyhanna to a USPS collection box in East Stroudsburg, Pennsylvania, where he mailed a parcel. That same day, law enforcement observed Mr. T. Bangurah mail another parcel from a mailbox in Tobyhanna, Pennsylvania. Law enforcement obtained search warrants for both those packages and found that each contained 27 counterfeit oxycodone pills. Law enforcement subsequently identified the

person to whom one of the packages was addressed, who confirmed that the individual purchased the pills from "MonPham"—*i.e.* the defendants. That individual told investigators that he or she didn't realize the pills contained fentanyl. The pills in each package contained fentanyl.

8. Approximately one week later, law enforcement witnessed the defendant and his partner carrying an infant child out of the residence. Law enforcement executed a search warrant at the residence a few days later. Among other things, law enforcement found the home laboratory, including large amounts of pills and chemicals; numerous loose pages constituting a drug ledger, which included records of sales to the undercover names and addresses used to conduct the controlled purchases; and numerous electronic devices. Additionally, when the defendants advertised on darkweb markets, they frequently placed pills on a white piece of paper with the name of the market, date, and "MonPham" handwritten on them; law enforcement found numerous examples of those sheets.

9. Law enforcement additionally found extensive text messages between the defendant and Ms. Franklin illustrating the day-to-day operations of the conspiracy. Ms. Franklin and the defendant shared responsibility for manufacturing the pills, with Ms. Franklin taking primary responsibility for manufacturing the pills during the periods when the defendant was living overseas. The defendant was responsible for operating the darkweb accounts, purchasing mailing labels using cryptocurrency, and attempting to "wash" the proceeds of their drug sales. Mr. T. Bangurah was primarily responsible for mailing packages and purchasing supplies, such as packaging. In the messages, the defendant and Ms. Franklin often complained about negative customer reviews and discussed their desire to make large sums of money by selling drugs.

10. In total, based on the drug ledgers, the defendants distributed pills to customers in all 50 states, as well as Puerto Rico, in fulfilling approximately 1,300 orders. They distributed at

3

least 3,000 counterfeit oxycodone pills and at least 56,000 counterfeit Xanax pills. The counterfeit Xanax pills contained designer benzodiazepines, while the counterfeit oxycodone pills typically contained fentanyl. Based on laboratory results from controlled purchases and material seized during execution of the search warrant at the defendants' residence, the government has confirmed that the defendants distributed at least 160 grams but less than 280 grams of fentanyl (Level 26).

11. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

12. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _/s/ Philip Alito_

Philip Alito
Gavin R. Tisdale
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Nabyunissa Bangoura, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Nabyunissa Bangoura

I am Paul Vangellow, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Paul P. Vangellow
Attorney for Nabyunissa Bangoura

FILED
IN OPEN COURT

MAR - 5 2024

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TANZILUDIN BANGURAH,<br><br>*Defendant.* | No. 1:23-cr-121 |

## STATEMENT OF FACTS

The United States and the defendant, Tanziludin Bangurah (hereinafter, "the defendant"), agree that, at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about September 2019 through at least in or about August 2022, in the Eastern District of Virginia and elsewhere, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with others, including Nabyunissa Bangoura and Hadja Franklin, to distribute 40 grams or more of a mixture and substance containing fentanyl.

2. Along with Mr. Bangoura and Ms. Franklin, the defendant manufactured and sold counterfeit oxycodone and Xanax pills. The defendant and his coconspirators manufactured their pills in a home laboratory in their residence, sold them on the Internet using darkweb markets and an encrypted application, and distributed them through the mail.

3. In order to set-up their home laboratory, the defendants purchased a pill press, binding agents, and protective gear used while manufacturing their pills. The defendants purchased fentanyl from China using the Internet.

4. In order to distribute their counterfeit pills, the defendants operated accounts on at least nine darkweb markets using the moniker "MonPham." The defendants also sold pills on the encrypted application Wickr, using the moniker "DrZhivagoEM." While the defendants' advertisements for counterfeit oxycodone specifically disavowed the use of fentanyl, the government made numerous controlled purchases of counterfeit oxycodone that, in fact, contained fentanyl.

5. Beginning in late 2021, the government began making controlled purchases from the defendants. In total, the government made 13 controlled purchases from the defendants. Four of those purchases, totaling 95 pills, were for counterfeit Xanax pills. The remaining nine purchases, totaling 511 pills, were for counterfeit oxycodone pills. Numerous purchases were sent to undercover mailboxes in the Eastern District of Virginia.

6. Law enforcement was able to identify the defendants' residence in Tobyhanna, Pennsylvania by tracing the flow of cryptocurrency associated with certain controlled purchases. Law enforcement discovered that the defendants typically mailed their drugs using a distinctive type of packaging sold only at WalMart and obtained surveillance footage of the defendant purchasing large amounts of the packing material at a WalMart store located near the defendants' residence.

7. Law enforcement conducted surveillance of the defendants. On August 24, 2022, law enforcement observed the defendant drive from the residence in Tobyhanna to a USPS collection box in East Stroudsburg, Pennsylvania, where he mailed a parcel. That same day, law enforcement observed the defendant mail another parcel from a mailbox in Tobyhanna, Pennsylvania. Law enforcement obtained search warrants for both those packages and found that each contained 27 counterfeit oxycodone pills. Law enforcement subsequently identified the

person to whom one of the packages was addressed, who confirmed that the individual purchased the pills from "MonPham"—*i.e.* the defendants. That individual told investigators that he or she didn't realize the pills contained fentanyl. The pills in each package contained fentanyl.

8. Approximately one week later, law enforcement witnessed Mr. Bangoura and his partner carrying an infant child out of the residence. Law enforcement executed a search warrant at the residence a few days later. Among other things, law enforcement found the home laboratory, including large amounts of pills and chemicals; numerous loose pages constituting a drug ledger, which included records of sales to the undercover names and addresses used to conduct the controlled purchases; and numerous electronic devices. Additionally, when the defendants advertised on darkweb markets, they frequently placed pills on a white piece of paper with the name of the market, date, and "MonPham" handwritten on them; law enforcement found numerous examples of those sheets.

9. Law enforcement additionally found extensive text messages between Ms. Franklin and Mr. Bangoura illustrating the day-to-day operations of the conspiracy. Ms. Franklin and Mr. Bangoura shared responsibility for manufacturing the pills, with Ms. Franklin taking primary responsibility for manufacturing the pills during the periods when Mr. Bangoura was living overseas. Mr. Bangoura was responsible for operating the darkweb accounts, purchasing mailing labels using cryptocurrency, and attempting to "wash" the proceeds of their drug sales. The defendant was primarily responsible for mailing packages and purchasing supplies, such as packaging. In the messages, Ms. Franklin and Mr. Bangoura often complained about negative customer reviews and discussed their desire to make large sums of money by selling drugs.

10. In total, based on the drug ledgers, the defendants distributed pills to customers in all 50 states, as well as Puerto Rico, in fulfilling approximately 1,300 orders. They distributed at

least 3,000 counterfeit oxycodone pills and at least 56,000 counterfeit Xanax pills. The counterfeit Xanax pills contained designer benzodiazepines, while the counterfeit oxycodone pills typically contained fentanyl. Based on laboratory results from controlled purchases and material seized during execution of the search warrant at the defendants' residence, the government has confirmed that the defendants distributed at least 160 grams but less than 280 grams of fentanyl (Level 26).

11. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

12. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Philip Alito
Gavin R. Tisdale
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Tanziludin Bangurah, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Tanziludin Bangurah

I am Chong Park, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Chong Park
Attorney for Tanziludin Bangurah



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:23-cr-121 |
| HADJA FRANKLIN, | |
| *Defendant*. | |

## STATEMENT OF FACTS

The United States and the defendant, Hadja Franklin (hereinafter, "the defendant"), agree that, at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about September 2019 through at least in or about August 2022, in the Eastern District of Virginia and elsewhere, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with others, including Nabyunissa Bangoura and Tanziludin Bangurah, to distribute 40 grams or more of a mixture and substance containing fentanyl.

2. Along with Mr. Bangoura and Mr. Bangurah, the defendant manufactured and sold counterfeit oxycodone and Xanax pills. The defendant and her coconspirators manufactured their pills in a home laboratory in their residence, sold them on the Internet using darkweb markets and an encrypted application, and distributed them through the mail.

3. In order to set-up their home laboratory, the defendants purchased a pill press, binding agents, and protective gear used while manufacturing their pills. The defendants purchased fentanyl from China using the Internet.

1

4. In order to distribute their counterfeit pills, the defendants operated accounts on at least nine darkweb markets using the moniker "MonPham." The defendants also sold pills on the encrypted application Wickr, using the moniker "DrZhivagoEM." While the defendants' advertisements for counterfeit oxycodone specifically disavowed the use of fentanyl, the government made numerous controlled purchases of counterfeit oxycodone that, in fact, contained fentanyl.

5. Beginning in late 2021, the government began making controlled purchases from the defendants. In total, the government made 13 controlled purchases from the defendants. Four of those purchases, totaling 95 pills, were for counterfeit Xanax pills. The remaining nine purchases, totaling 511 pills, were for counterfeit oxycodone pills. Numerous purchases were sent to undercover mailboxes in the Eastern District of Virginia.

6. Law enforcement was able to identify the defendants' residence in Tobyhanna, Pennsylvania by tracing the flow of cryptocurrency associated with certain controlled purchases. Law enforcement discovered that the defendants typically mailed their drugs using a distinctive type of packaging sold only at WalMart and obtained surveillance footage of Mr. Bangurah purchasing large amounts of the packing material at a WalMart store located near the defendants' residence.

7. Law enforcement conducted surveillance of the defendants. On August 24, 2022, law enforcement observed Mr. Bangurah drive from the residence in Tobyhanna to a USPS collection box in East Stroudsburg, Pennsylvania, where he mailed a parcel. That same day, law enforcement observed Mr. Bangurah mail another parcel from a mailbox in Tobyhanna, Pennsylvania. Law enforcement obtained search warrants for both those packages and found that each contained 27 counterfeit oxycodone pills. Law enforcement subsequently identified the

person to whom one of the packages was addressed, who confirmed that the individual purchased the pills from "MonPham"—*i.e.* the defendants. That individual told investigators that he or she didn't realize the pills contained fentanyl. The pills in each package contained fentanyl.

8.  Approximately one week later, law enforcement witnessed Mr. Bangoura and his partner carrying an infant child out of the residence. Law enforcement executed a search warrant at the residence a few days later. Among other things, law enforcement found the home laboratory, including large amounts of pills and chemicals; numerous loose pages constituting a drug ledger, which included records of sales to the undercover names and addresses used to conduct the controlled purchases; and numerous electronic devices. Additionally, when the defendants advertised on darkweb markets, they frequently placed pills on a white piece of paper with the name of the market, date, and "MonPham" handwritten on them; law enforcement found numerous examples of those sheets.

9.  Law enforcement additionally found extensive text messages between the defendant and Mr. Bangoura illustrating the day-to-day operations of the conspiracy. The defendant and Mr. Bangoura shared responsibility for manufacturing the pills, with the defendant taking primary responsibility for manufacturing the pills during the periods when Mr. Bangoura was living overseas. Mr. Bangoura was responsible for operating the darkweb accounts, purchasing mailing labels using cryptocurrency, and attempting to "wash" the proceeds of their drug sales. Mr. Bangurah was primarily responsible for mailing packages and purchasing supplies, such as packaging. In the messages, the defendant and Mr. Bangoura often complained about negative customer reviews and discussed their desire to make large sums of money by selling drugs.

10. In total, based on the drug ledgers, the defendants distributed pills to customers in all 50 states, as well as Puerto Rico, in fulfilling approximately 1,300 orders. They distributed at least 3,000 counterfeit oxycodone pills and at least 56,000 counterfeit Xanax pills. The counterfeit Xanax pills contained designer benzodiazepines, while the counterfeit oxycodone pills typically contained fentanyl. Based on laboratory results from controlled purchases and material seized during execution of the search warrant at the defendants' residence, the government has confirmed that the defendants distributed at least 160 grams but less than 280 grams of fentanyl (Level 26).

11. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

12. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____

Philip Alito
Gavin R. Tisdale
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Hadja Franklin, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Hadja Franklin

I am Murdoch Walker, defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Murdoch Walker
Attorney for Hadja Franklin

_____
Todd S. Baldwin
Attorney for Hadja Franklin